USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/2/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABRIELLE SCHULMAN,

Plaintiff,

-against-

24 Civ. 8322 (AT)

THE DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

**ORDER**

Defendant.

ANALISA TORRES, District Judge:

In this employment discrimination action, Plaintiff, Gabrielle Schulman, alleges that Defendant, the Department of Education of the City of New York ("DOE"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") when it constructively terminated her employment as a visual arts teacher because of her gender and in retaliation for protected activity. *See generally* Am. Compl., ECF No. 21. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot., ECF No. 30; *see also* Mem., ECF No. 31; Opp., ECF No. 34; Reply, ECF No. 38. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

In 2009, the DOE hired Schulman as a "Visual Arts" teacher. Am. Compl. ¶ 8. In about February or March 2020, Schulman's principal (who is unnamed in the complaint) approached her and asked her to "go away with him for three days"; she refused. *Id.* ¶ 10. Schulman subsequently discovered that the principal was "involved" with another co-worker. *Id.* ¶ 11. Later, by text message, the principal called Schulman a "beaver" and sent her about ten text messages with

---

[1] The following facts are taken from Schulman's complaint, and the Court takes all well-pleaded facts alleged in the complaint as true, drawing all reasonable inferences in favor of Schulman. *See Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

"inappropriate sexual images, such as genitalia." *Id.* ¶ 12. She received the last of such messages in September 2022. *Id.*

"Shortly after [Schulman] refused the principal's sexual advances," the principal began to "cut [Schulman's] funding," and she "was closely scrutinized, such as the times in which she clocked in and out, in contrast with other teachers." *Id.* ¶¶ 19–20. "The principal also began systematically isolating [Schulman] from opportunities within and outside the DOE," such as by refusing to sign a permission form for Schulman to apply to a professional learning group. *Id.* ¶¶ 21–22. During a roughly two-year period from September 2021 through October 2023, the principal did not extend Schulman opportunities to attend trainings and workshops on at least seven occasions. *Id.* ¶¶ 23–24. Once, in January 2022, the principal "left [Schulman] inside the building alone and left unannounced." *Id.* ¶ 27.

In February and April 2022, Schulman complained to the assistant principal about the principal's conduct. *Id.* ¶ 14. On or about May 23, 2022, the principal and assistant principal called Schulman to their office and gave her a "counseling memo." *Id.* ¶ 30. A letter, which appears to be dated June 26, 2022, accused Schulman of several absences, even though her absences were for medical reasons. *Id.* ¶¶ 32–33. From June 2022 through October 2023, the principal "withheld . . . resources, opportunities, media art technology, and a textbook request for visual art expenditures." *Id.* ¶ 42.

In the fall of 2022, Schulman complained to two deans of the school about the principal. *Id.* ¶ 14. In September 2022, the principal imposed a heavier workload by assigning Schulman a higher volume of classes and students (from "about 165 to over 250"). *Id.* ¶ 26. Before the principal made sexual advances, Schulman states that she had a "lighter workload, was not subjected to fast-paced work environments, and was not micromanaged." *Id.*

Schulman then "went to the New York City Commission on Human Rights [('NYCCHR')] in late December 2022," and to the "Conflict Board" in January 2023, complaining of discrimination by the principal. *Id.* ¶ 13. She also complained to the teacher's union borough representative and other union administrators, whom she believed "addressed" "her concerns regarding discrimination" with the principal. *Id.* ¶ 15. On January 23, 2023, the principal "crafted" and "presented to" Schulman a letter restricting her communication inside and outside the workplace and directing her to "copy every piece of correspondence she sent." *Id.* ¶ 35. On February 10, 2023, she "received [another] letter," stating that she was insubordinate by refusing to cover classes, failed to appear at a disciplinary meeting, and misused her email by allegedly copying parents on internal emails. *Id.* ¶ 36.

In May 2023, Schulman "contacted" the Equal Employment Opportunity Commission ("EEOC") "via email . . . to file a complaint." *Id.* ¶ 6. In August 2023, she "complained to" an executive-level administrator of the teacher's union, as well as to the DOE's Chancellor's office. *Id.* ¶ 15–16. At some point, although the complaint does not specify when, the principal blocked Schulman from reaching out to the school's dean or guidance department for support with students who "created an unsafe work environment and experience for [Schulman] in the classroom." *Id.* ¶ 40. In November and December 2023, Schulman submitted "safety report[s]" about these students, but the students were not disciplined. *Id.* ¶¶ 40, 43.

Because she felt that the essential functions of her job were altered, and because she was denied opportunities to grow and receive new training and income, Schulman suffered from anxiety, and her treating physician advised her to consider resigning, which she did in January 2024. *Id.* ¶ 47–49.

II. <u>Procedural History</u>

On May 23, 2023, Schulman "contacted the EEOC via email . . . to file a complaint." *Id.* ¶ 6. On June 23, 2023, the EEOC interviewed her and assigned her a charge number. *Id.* On October 2, 2023, she filed a claim, and on April 17, 2024, she received her right to sue letter. *Id.* Schulman filed this action in state court on July 15, 2024, within 90 days of receipt of the right to sue letter. *See* Compl., ECF No. 7-1; Right to Sue Letter, ECF No. 21-1; Notice of Removal, ECF No. 7. Defendant later removed the action to federal court. *See* Notice of Removal.

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In a Title VII discrimination case, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motive." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

**DISCUSSION**

I.  Timeliness

Schulman pleads several allegedly discriminatory or retaliatory acts that are time barred. "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)). Typically, "practice" means "a discrete act or single 'occurrence,'" and "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" "even when it has a connection to other acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.[2]

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. "Under Title VII's continuing violation doctrine," however, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001)). "Conduct that has been characterized as a continuing violation is 'composed of a series of

---

[2] Discrete acts that occurred outside the statute of limitations period may be used "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) ("[E]vidence of an earlier alleged [discriminatory or] retaliatory act may constitute relevant background evidence in support of [a] timely claim . . . [and] may be considered to assess liability on the timely alleged act." (internal quotation marks and citation omitted)).

separate acts that collectively constitute one unlawful employment practice.'" *Id.* at 318 (quoting *Morgan*, 536 U.S. at 111). For example, "[a] charge alleging a hostile work environment claim . . . will not be timed barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

A. Appropriate Limitation Period

Schulman filed her charge with the EEOC on October 2, 2023. Am. Compl. ¶ 6. Thus, discrete acts of discrimination that occurred before December 6, 2022, 300 days prior to the filing date, are not actionable. *Patterson*, 375 F.3d at 220.

"Although 'filing a timely charge of discrimination with the EEOC . . . is subject to waiver, estoppel, and equitable tolling,'" Schulman "has not alleged, nor does the Court find, an adequate basis for relief from the limitation period on any of these grounds." *Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 747 (S.D.N.Y. 2005) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)), *aff'd,* 177 F. App'x 121 (2d Cir. 2006). Schulman does not state that the DOE caused her delay in bringing this claim. *See id.* Schulman argues that because she "reached out to the EEOC in May 2023," "the statute of limitations should be the date Schulman reached out to the EEOC to file, or at the minimum, when she had her first appointment in June 2023," rather than when she filed her charge in October 2023. Opp. at 10–11. But the doctrine of equitable tolling applies "only in rare and exceptional circumstances where a party has been prevented in some extraordinary way from exercising [her] rights." *Francis*, 372 F. Supp. 2d at 747 (citation omitted). The EEOC filing period is not tolled or delayed pending an employee's realization that she must file a charge with the EEOC unless she was, for example, "actively misled by [her] employer," "prevented in some extraordinary way from exercising [her] rights," or "assert[ing] [her] rights in the wrong forum." *Francis*, 372 F. Supp. 2d at 748 (quoting *Miller v. IT&T Corp.*, 755 F.2d 20,

6

24 (2d Cir. 1985)).  Schulman makes no such allegations.  Therefore, it is clear from the complaint that the 300-day limitation applies to Schulman's claims.

### B.  Continuous versus Discrete Acts

Schulman contends that the alleged discriminatory acts that occurred prior to December 6, 2022 remain viable pursuant to Title VII's continuing violation doctrine.  Opp. at 9–11.

Schulman alleges that in February or March of 2020, the principal asked her to go with him on a trip and sent her ten sexually inappropriate text messages.  She received the last of these messages in September 2022, and no other inappropriate incidents occurred since then.  *See* Am. Compl. ¶¶ 10–12.  Although the Court finds that the principal's unwelcome advances constitute continuous conduct, the last date of the principal's inappropriate behavior falls outside the limitations period; therefore, claims based on this conduct are not actionable.

Isolating Schulman from opportunities within and outside the DOE, *see id.* ¶ 22–24, however, plausibly involves "a series of related acts where at least one of the acts occurred within the limitations period."  *Lloyd v. WABC-TV*, 879 F. Supp. 394, 400 (S.D.N.Y. 1995).  *See* Am. Compl. ¶ 23 ("From September 2021 through October 2023, information about opportunities and training was deliberately withheld.").  Therefore, the Court holds that the withholding of training opportunities is plausibly one continuous employment practice.

The Court concludes that the remaining alleged acts predating December 6, 2022 are discrete and, therefore, not actionable under the continuing violations doctrine.  *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (holding that discrete acts "which fall outside the limitations period[] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period").  For example, Schulman alleges that, before December 6, 2022, the principal called her to his office

and presented her with a negative counseling memo, *id.* ¶ 30, and later increased her work responsibilities, *id.* ¶ 26.

Courts in this Circuit routinely find that these types of acts are discrete and do not constitute a continuing violation. *See, e.g.*, *Pietri v. N.Y. State Office of Court Admin.*, 936 F. Supp. 2d 120, 133–35 (E.D.N.Y. 2013) (explaining that discriminatory disciplinary practices, including unsatisfactory ratings and negative evaluations, are discrete acts); *Olivier v. Cnty. of Rockland*, No. 15 Civ. 8337, 2017 WL 934711, at *5 (S.D.N.Y. Mar. 8, 2017) ("Courts in the Second Circuit are in agreement that disciplinary actions against employees and negative employee evaluations are discrete acts that do not constitute a continuing violation."); *Oyelola v. Hartford Fin. Servs. Grp., Inc.*, No. 13 Civ. 1685, 2014 WL 496880, at *9 (D. Conn. Feb. 4, 2014) (holding that allegations of being "under-compensated, demoted, retaliated against, forced to work excessive hours, and denied benefits all involve discrete acts of discrimination"); *Vega*, 801 F.3d at 79–80 (explaining that unfavorable work assignments are discrete acts). Therefore, the negative letters and the increase in workload are not actionable.

## II. Hostile Work Environment

Although she did not distinctly plead a hostile work environment claim under Title VII in the amended complaint, *see generally* Am. Compl., Schulman raises this argument in her opposition brief. *See* Opp. at 16–17. A charge alleging a hostile work environment will not be timed barred where "all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. The Court considers the viability of the hostile work environment claim using the full scope of conduct alleged.

To state a hostile work environment claim under Title VII, a plaintiff must allege facts plausibly demonstrating that "the workplace is permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Finally, a plaintiff must allege facts that plausibly show that the conduct complained of "creates such an environment because of . . . [a] characteristic protected by Title VII." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001) (citation omitted). In considering whether a plaintiff has met her burden, courts "examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 745 (2d Cir. 2003) (quotation marks and citation omitted).

The Court concludes that Schulman fails to allege conduct of sufficient severity or pervasiveness to state a hostile work environment claim. Schulman claims that in February or March 2020, she once rejected the principal's sexual advances, and, in total, received about ten sexually inappropriate messages from him. *See id.* ¶ 12. He sent the last message in September 2022. *Id.* The principal's subsequent conduct over the next few years—namely, the denial of professional development opportunities, negative write-ups, and the imposition of other challenges, such as a heavy courseload and failing to discipline problem students, *see e.g.*, Am. Compl. ¶¶ 20–26, 43–45—do not amount to the sort of objective hostility necessary to support a hostile work environment claim. *See Littlejohn*, 795 F.3d at 321 (holding that allegations that an employer made negative statements about the plaintiff, required her to recreate work, wrongfully

9

reprimanded her, increased her schedule, and was harsh to her were insufficient to state a plausible hostile work environment claim); *Byas v. Yonkers Pub. Schs.*, No. 23 Civ. 8437, 2025 WL 963977, at *8 (S.D.N.Y. Mar. 31, 2025) (holding that the assignment of undesirable tasks, exclusion from training and other opportunities and resources, racial slurs by students, taken together, "fail to establish the kind of severity and pervasiveness that can amount to an actionable hostile work environment claim"); *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 646–48 (W.D.N.Y. 2014) (dismissing a hostile work environment claim predicated principally on facially neutral allegations of disparate treatment over three years, including exclusion from meetings, loss of work duties, derision regarding career advancement, denial of promotional opportunities, and unfair targeting, because such allegations did not evince a sufficient degree of objective hostility); *Parekh v. Swissport Cargo Servs., Inc.*, No. 08 Civ. 1994, 2009 WL 290465, at *5 (E.D.N.Y. Feb. 5, 2009) (concluding that plaintiff's complaints concerning "unfair disciplinary actions, shift changes, reduction in manpower, wrongfully withheld vacation time, failure to provide him with proper equipment, workplace transfers, failure to promote, and his termination" did not sufficiently suggest the degree of "hostility or offensiveness" required to withstand a motion to dismiss); *see also Ben-Levy v. Bloomberg L.P.*, No. 11 Civ. 1554, 2012 WL 2477685, at *12 (remarking that a hostile work environment claim "is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation" (emphasis omitted) (quotation marks omitted)).

Therefore, Schulman's allegations are insufficient to plausibly state a hostile work environment claim.

III.    Gender or Sex Discrimination Claim

Schulman also brings a disparate treatment claim under Title VII. *See* Opp. 11–15. Such claims are analyzed using the burden-shifting framework adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). To establish a *prima facie* case of discrimination, Schulman must show that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Although the amended complaint does not make it clear when certain actions occurred, the Court identifies the following allegedly discriminatory acts as plausibly timely: (1) increased scrutiny of her work, Am. Compl. ¶ 20; (2) the withholding of information about training and professional development opportunities, *id.* ¶¶ 23–25, 39; (3) the withholding of "resources, . . . media art technology, and a textbook request for visual art expenditures," *id.* ¶ 42; (4) the introduction of certain negative letters in Schulman's personnel file, including a letter restricting Schulman's communications and a letter documenting insubordination in refusing to cover classes, *id.* ¶¶ 34–35; and (5) the failure to provide support from the school's dean and guidance department when students acted out, *id.* ¶ 40, 44–45. Schulman also alleges she was constructively terminated. *See* Am. Compl. ¶¶ 20, 25, 26, 47.

The Court finds that Schulman has not plausibly alleged an adverse employment action for the purposes of her disparate treatment claim. The Second Circuit has described an adverse employment action as a "materially adverse change in the terms and conditions of employment."

*Vega*, 801 F.3d at 85 (quotation omitted).  It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (quotation omitted)*.*

First, "disciplinary write-ups or negative evaluations are not adverse actions sufficient to support a discrimination claim unless they affect the employee's terms of conditions of employment (*e.g.*, reducing wages, disqualifying plaintiff from a promotion opportunity, or leading to demotion or termination)."  *Singa v. Corizon Health, Inc.*, No. 17 Civ. 4482, 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (holding that "criticism of an employee (which is part of training and necessary to allow employees to develop, improve, and avoid discipline) is not an adverse employment action" (quotation omitted)).  Schulman does not allege that the negative write-ups affected her pay, led to her demotion, or anything similar.  *See Singa*, No. 2018 WL 324884, at *4*.*  Therefore, she does not plausibly allege that these constitute adverse actions.

Second, the "withholding of resources, without more, does not constitute an adverse employment action."  *Byas*, 2025 WL 963977, at *10 (internal quotation marks omitted).  Schulman merely alleges that the principal denied her "media art technology, and a textbook request for visual arts expenditures."  *Id.* ¶ 42.  Increased scrutiny is not an adverse employment action either.  *See Field v. Tonawanda City School Dist.*, 604 F. Supp. 2d 544, 556 (W.D.N.Y. 2009) ("[C]hanges in teaching assignments and additional administrative scrutiny of their work, without more, fail as a matter of law to establish an adverse employment action."); *see also Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) ("Scheduling and assignment issues involving course loads are generally not considered materially adverse employment actions.").  Nor is the failure to take action with respect to difficult students.  *See Jenkins v. Bd. of Educ. of City of N.Y.*, 64 F. App'x 801, 804 (2d Cir. 2003) ("While Plaintiff[]

12

alleges that [the principal] did not remove the disproportionate number of 'problem' students from his class, standing alone, this does not constitute an adverse employment action.").

A "[d]enial of training," however, "can constitute an adverse employment action where it bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation.'" *Hill v. Rayboy-Braustein*, 467 F. Supp. 2d 336, 353 (S.D.N.Y 2006) (second alteration in original) (internal quotation marks omitted). But Schulman's allegations that the denial of training opportunities stalled her career or deprived her of income-generating opportunities are conclusory and non-specific. *See, e.g.*, Am. Compl. ¶ 47. Schulman does not identify what opportunities she was excluded from, allege that she would have otherwise been able to participate in them, or explain how they are connected to the loss of income, career stagnation, or missed promotional opportunities. *See id.*; *Hill*, 467 F. Supp. at 353 ("When an employee cannot show material harm from a denial of training, such as failure to promote or a loss of career advancement opportunities, there is no adverse employment action.").

Finally, Schulman has not plausibly alleged that her voluntary resignation amounts to a constructive discharge. "Under the constructive discharge doctrine, a voluntary resignation will not preclude a finding of an adverse employment action if the plaintiff can show that 'the employer . . . deliberately [made] working conditions so intolerable that the employee [was] forced into an involuntary resignation.'" *Chanval Pellier v. Brit. Airways, Plc.*, No. 02 Civ. 4195, 2006 WL 132073, at *4 (E.D.N.Y. Jan. 17, 2006) (alterations in original) (quoting *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983)). "The Second Circuit has strictly construed the standard for determining whether working conditions are intolerable," holding that the proper test is not "merely whether the employee's working conditions were difficult or unpleasant." *Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 284 (S.D.N.Y. 2000). The Supreme Court has

13

suggested that constructive discharge is a "worst case" harassment scenario, a hostile working environment "ratcheted up to the breaking point." *Penn. State Police v. Suders*, 542 U.S. 129, 147–48 (2004). "Without an actionable hostile environment claim, [a] plaintiff's constructive discharge claim must also fail." *Ferraro v. Kellwood Co.*, No. 03 Civ. 8492, 2004 WL 2646619, at *11 (S.D.N.Y. Nov. 18, 2004) (citation omitted). Thus, because Schulman fails to state a hostile work environment claim, her constructive discharge claim is not viable.

In sum, Schulman's complaint does not plausibly allege an adverse employment action within the limitations period. Therefore, her disparate treatment claim must be dismissed.

IV.    Retaliation Claim

Title VII also prohibits discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). "Retaliation claims under Title VII . . . are . . . analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." *Littlejohn*, 795 F.3d at 315. To demonstrate a *prima facie* case of retaliation, a plaintiff must establish: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). "The plaintiff's burden of proof at the *prima facie* stage is '*de minimis*.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)). "[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 315).

14

Schulman does not specify which acts were taken against her in retaliation for her various complaints, but the Court presumes that she considers all the timely actions described in Section III, to be retaliatory acts.[3]

First, as a general matter, although Schulman may rely on temporal proximity to establish causation, *Littlejohn*, 795 F.3d at 319 ("A causal connection in retaliation claims may be shown . . . indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . ." (citation omitted)), she largely fails to allege sufficient facts regarding the timing of the principal's allegedly retaliatory acts to establish causation. Schulman's complaint does not specify when funding, training opportunities, or certain resources (e.g., textbooks, guidance counselor support) were denied. *See, e.g.*, *United States ex rel. Aharon v. Nuvance Health, Inc.*, No. 24 Civ. 524, 2025 WL 968583, at *20 (S.D.N.Y. Mar. 31, 2025) (holding that the failure to provide a clear timeline of events "prevents the Court from finding temporal proximity, and therefore from inferring causation through indirect evidence"). As a result, the Court cannot determine that Schulman has plausibly alleged retaliatory motive with respect to those actions.

However, the Court finds that Schulman has plausibly alleged a retaliation claim with respect to certain negative write-ups soon after Schulman complained about discrimination to city agencies and the teacher's union. Specifically, Schulman alleges that in late December 2022, she "went to" the NYCCHR, and in January 2023, she "went to" the "Conflict Board," complaining about gender discrimination and retaliation. Am. Compl. ¶ 13. Around this time, she also

---

[3] These include the principal's (1) increased scrutiny of her work, Am. Compl. ¶ 20; (2) withholding of information about training and professional development opportunities, *id.* ¶¶ 23–25, 39; (3) withholding of "resources, opportunities, media art technology, and a textbook request for visual art expenditures," *id.* ¶ 42; (4) introduction of certain negative write-ups in Schulman's personnel file, including a letter restricting Schulman's communications and a letter documenting insubordination, *id.* ¶¶ 34–35; and (5) failure to provide support from the school's dean and guidance department regarding students who acted out, *id.* ¶ 40, 44–45.

complained of discrimination to the teacher's union borough representative and executive-level administrators. *Id.* ¶ 15. There is no dispute that such complaints constitute protected activity. On January 23, 2023, the principal "crafted" and "presented to" Schulman a letter restricting her communication inside and outside the workplace and requiring her to "copy each piece of correspondence she sent." *Id.* ¶ 35. And on February 10, 2023, Schulman received another negative letter, which alleged that she was insubordinate in refusing to cover classes and failing to appear at a disciplinary meeting and that she misused her email. *Id.* ¶ 36.

These letters constitute adverse employment actions for the purposes of a retaliation claim. "[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Unlike in discrimination claims, negative performance reviews, standing alone, can be considered an adverse employment action" in retaliation claims. *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008). "Courts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015).

Here, the close temporal gap between the protected activity and the allegedly retaliatory action supports a plausible inference of retaliatory motive. *See Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed clearly in time by adverse employment action."). Her complaints to administrative bodies were made in late December 2022 and in January 2023, and the principal presented negative letters to her soon after, in mid-January and early February 2023.[4]  *See Cunningham v. Consol. Edison Inc.*, No. 3 Civ. 3522, 2006 WL

---

[4] Although any claims based on these incidents would be time barred, the Court considers as background context that within one month of Schulman's complaint to the assistant principal in April 2022, the principal and assistant

842914, at *19 (E.D.N.Y. Mar. 28, 2006) (observing that a gap of less than two months is typically sufficient evidence of causality to establish a *prima facie* case of retaliation).

Finally, Schulman's allegations that she complained to an administrative body, that she believes the union addressed her concerns regarding discrimination with the principal, and that the principal's negative letter restricted Schulman's communications with those outside the workplace, *see* Am. Compl. ¶¶ 14–15, 35, all support a reasonable inference that the principal was aware of Schulman's protected activity when he presented her with the negative letters in January and February 2023.

Therefore, Schulman's allegations are sufficient to state a claim that the January and February 2023 letters constituted unlawful retaliation under Title VII.

V.      Leave to Replead

"[D]ismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991).  At this juncture, the Court cannot conclude that amendment of Schulman's claims would be futile, and therefore GRANTS Schulman leave to amend her complaint to address the infirmities identified in this order.  Should Schulman decide to reassert her claims, by **March 23, 2026**, she shall file an amended complaint in accordance with Rule III(H) of the undersigned's Individual Practices in Civil Cases.

---

principal gave her a negative "counseling memo." *See* Am. Compl. ¶¶ 14, 30.  Later, in the fall of 2022, around when she complained to two deans about the principal's behavior, the principal increased her courseload, and the Arts Education Liaison, at the principal's direction, stopped forwarding information to Schulman. *See id.* ¶¶ 14, 25–26; *see also Morgan*, 536 U.S. at 113 (allowing courts to consider time-barred claims as background evidence when evaluating timely claims).

17

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Schulman's claims are dismissed, with the exception of her claim that the January and February 2023 letters constituted unlawful retaliation under Title VII.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 30.

SO ORDERED.

Dated: March 2, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge